In re Kim Mary **HATFIELD, Debtor.**

**Kim Mary Hatfield, Plaintiff,**

v.

**William D. Ford Federal Direct Consolidation Program; EFG Technologies; Eduserve; Montana Higher Education Student Assistance Corporation; United States Department of Education; U.S.A. Group Loan Service; Perkins MSU Billings, f/k/a Eastern Montana College of Education, Defendants.**

Bankruptcy No. 00–10409–7.
Adversary No. 00/00042.

United States Bankruptcy Court,
D. Montana.

Nov. 29, 2000.

Joanne M. Briese, Billings, MT, for plaintiff.

Victoria L. Francis, Assistant U.S. Attorney, U.S. Attorney's Office, Billings, MT, for defendant, United States Department of Education.

LeRoy H. Schramm, Montana University System, Helena, MT, for Montana University System.

### ORDER

RALPH B. KIRSCHER, Bankruptcy Judge.

In this adversary proceeding the Plaintiff/Debtor Kim Mary Hatfield ("Kim"), who suffers from major depression and dysthymia, seeks a determination under 11 U.S.C. § 523(a)(8) that denying the discharge of her student loan obligations ow-

ing to the Defendants United States of America and the Montana State University System, would impose an undue hardship on her. In addition to the United States of America and the Montana State University System, Kim's Complaint also named U.S.A. Group Loan Service, Eduserve, EFG Technologies, William D. Ford Federal Direct Consolidation Program and Montana Higher Education Student Assistance Corporation as defendants. However, Kim sought and obtained Default Judgment against the aforementioned Defendants on September 12, 2000, for their failure to plead or otherwise defend in this action. Thus, trial between Kim and the remaining Defendants was scheduled to be held September 12, 2000. Pursuant to Kim's request, the trial scheduled for September 12, 2000, was continued to October 4, 2000, by Order entered August 29, 2000. On September 28, 2000, this Court granted a request filed by the United States that the trial scheduled for October 4, 2000, be vacated and the parties be allowed to submit the matter to the Court on an agreed statement facts and simultaneous briefs.

On October 17, 2000, Kim's counsel filed a document entitled "Agreed Statement of Facts" which provides, in total [1]:

COMES NOW, Plaintiff, Kim Mary Hatfield, by and through her attorney of record, Joanne M. Briese, and in compliance with the Court's Order to submit an Agreed Statement of Facts among Plaintiff Kim Mary Hatfield, United States of America and Montana State University System, advises as follows:

1. Agreed facts as set out in answers to discovery as attached with copies of

---

1. Neither the "Agreed Statement of Facts" nor the attachments thereto contain the signature of counsel for the United States or counsel for the Montana University System. Thus, one wonders whether the document is truly an "Agreed" statement of facts. Moreover, the "Agreed Statement of Facts" sets forth no facts relevant to this case and instead makes reference to a collection of various documents from which the Court is to distill the relevant facts. In this Court's opinion, counsel for the parties in this Adversary Proceeding have wholly failed to perform the functions to which they were charged. This Court does not condone such actions, or inactions as the case may be, and must now either reset this matter for trial or complete the work which should have been done by the parties.

correspondence from doctors relating to medical condition.

2. Agreed Statement of Facts from Victoria L. Francis as attached hereto.

3. Chronological list faxed by LeRoy Schramm as attached.

DATED this 16th day of October 2000.

Victoria L. Francis, on behalf of the United States of America, filed a "Memorandum of Law in Support of Nondischargeability of Student Loan" on October 23, 2000. LeRoy Schramm, on behalf of the Montana University System filed a "Statement in Support of Defendants' Positions in Lieu of Brief" on October 23, 2000, and Kim's brief was filed on October 25, 2000. The Court has reviewed the various documents filed in this case, including the parties' briefs, and has reviewed the applicable law under § 523(a)(8) and deems this matter ready for decision.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding to determine the dischargeability of a particular debt under 28 U.S.C. § 157(b)(2)(I); specifically, whether excepting Kim's student loan debts from her discharge would impose an undue hardship on her as provided under § 523(a)(8). This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052. After careful consideration of the facts and applicable law, the Court finds in favor of the Defendants United States of America and the Montana State University System.

## FACTS

As noted above, Kim's counsel filed an "Agreed Statement of Facts" which contains no facts whatsoever and which was not signed by counsel for either of the Defendants. After reviewing the attachments to the parties' alleged "Agreed Statement of Facts", the Court makes the following factual findings:

1. From March 1989 through January 1992, Kim received Loans to attend Montana State University–Billings. The original amount of the loans totaled $6,895.00. From March 1993 to July 1996, Kim made twenty-eight (28) payments on her Perkins loan. She paid $846.65 in principal, $817.18 in interest and $7.30 in late fees. From March 1988 to November 1990, Kim borrowed $19,175.00 from the Montana Higher Education Student Assistance Corporation (MHESAC) to attend Montana State University–Billings. In the Spring of 1992, at the time of graduation from Montana State University–Billings, Kim owed $19,175.00 to MHESAC. Kim made payments on her MHESAC loan totaling $4,971.87.

2. On February 13, 1998, Kim defaulted on her MHESAC loans.

3. On April 23, 1999, the defendant executed a Federal Direct Consolidation Loan Application and Promissory Note under the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070 et. seq. On September 14, 1999, the Department of Education Guarantee Agency consolidated Kim's defaulted loans from MHESAC resulting in a combined balance of $28,601.13. As of October 10, 2000, the amount due was $32,479.62 in principal, plus interest on the principal in the amount of $839.57 for a total amount owed of $33,319.19.

4. In February 1998, Kim attempted Student Loan Rehabilitation and also Consumer Counseling to reorganize her debts, but student loan payments made it impossible for her to pay other debts so she chose bankruptcy as a last resort. Kim applied for and was accepted for the Income Contingency Repayment Program which takes into account current earnings. Repayment is based on ability to pay and since

Kim is not currently employed, she is not required to make monthly student loan payments.

5. Kim received a degree in Education from Montana State University–Billings in 1992. Kim received her teaching certificate in 1994 but, to date, has not been able to secure a teaching position.

6. Kim worked for the Human Resources Development Council until 1998, initially earning $7.00 per hour. However, as a result of receiving her teaching certificate in 1994, Kim's wages at the Human Resources Development Council increased to $9.18 per hour.

7. In 1997, Kim was fired from her job at the Human Resources Development Council but was reinstated after she contested her discharge.

8. In 1998, Kim quit her job at the Human Resources Development Council because the situation was "tense" and instead went to work for the American Diabetes Association with a salary of $1,666.66 per month.

9. In 1999 Kim accepted temporary employment with the Denver Regional Census Center at a rate of $16.75 per hour.

10. Kim was laid off from the Census job effective September 9, 2000, and is now pursuing other employment. Kim has had interviews with potential employers since July of 2000. However, Kim's teaching certificate has expired and she is not financially able to return to school for the necessary classes. As a consequence, Kim is no longer seeking a teaching position.

11. Kim has a twelve-year-old child and receives no child support. Kim has no health insurance. A letter from Kim's doctor dated September 6, 2000, states Kim is presently under treatment for major depression and dysthymia. Kim is being treated with a combination of medications and therapy. The letter from Kim's doctor states her prognosis is good if she remains in treatment, her mental illness is both chronic and persistent, and she will probably require treatment for the remainder of her life. The cost of her treatment is "quite significant."

12. Kim's adjusted gross income over the past four years is as follows: $14,335.00 in 1996; $15,597.00 in 1997; $21,232.00 in 1998; and $19,274.00 in 1999.

13. Kim's Schedules I and J, which were filed with her Chapter 7 petition, reflect that Kim's monthly expenses exceed her monthly income by $26.12 per month.[2] Kim's scheduled expenses include $250.00 per month for medical and dental expenses, $150.00 per month for miscellaneous personal expenses and $300.00 per month for student loan payments.

14. Kim was born on August 10, 1967. Kim filed a voluntary bankruptcy petition on February 22, 2000, and received a discharge in her bankruptcy on June 13, 2000.

## APPLICABLE LAW

At the time Kim filed her voluntary Chapter 7 bankruptcy petition on February 22, 2000, 11 U.S.C. § 523(a) had been amended to read as follows:

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

---

2. Kim's Brief filed October 25, 2000, states: "An amended Schedule I has been filed with the Court reflecting that Kim presently has an income consisting of unemployment of $150.00 per week or a total of $650.00 per month. Kim is attempting to supplement this income with substitute teaching while she seeks employment." As of the date of this Order, the Court has not received Kim's amended Schedule I.

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

■ The Bankruptcy Code does not define "undue hardship." Courts have held, however, that Congress intended the term to be interpreted strictly, and on a case-by-case basis. *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98 (Bankr.N.D.Ohio 1982); *United States v. Brown (In re Brown)*, 18 B.R. 219 (Bankr. Kan.1982); *Garmerian v. Rhode Island Higher Educ. Assistance Auth. (In re Garmerian)*, 81 B.R. 4 (Bankr.R.I.1987). As the court in *Brown* noted:

It seems universally accepted, however, that "undue hardship" contemplates unique and extraordinary circumstances. Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy.

*Brown*, 18 B.R. at 222. *See also, Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 196 (Bankr. N.D.Ohio 2000) ("[T]he existence of the adjective 'undue' in front of the word 'hardship' clearly indicates that Congress intended that the hardship experienced by the debtor must be very severe."). In addition:

[A] loan ... that enables a person to earn substantially greater income over his working life should not as a matter of policy be dischargeable before he has demonstrated that for any reason he is unable to maintain himself and his dependents and to repay the educational debt.

*Report of the Comm'n of the Bankr.Laws of the United States,* House Doc. No. 93–137, Part I, 93rd Cong., 1st Sess. (1973) at 140, n. 14 and 15, reprinted in Collier on Bankruptcy, Appendix 2 at PI-i. Moreover, in a complaint to determine the dischargeability of debt, it is the debtor who carries the burden of showing evidence of undue hardship sufficient to discharge a student loan. *Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 393 (E.D.Mich.1993); *Rose v. United Student Aids Funds MT (In re Rose)*, 6 Mont.B.R. 462, 464 (Bankr.Mont.1988); *Connecticut Student Loan Found. v. Keenan (In re Keenan)*, 53 B.R. 913 (Bankr.Conn.1985).

■ Courts have identified several factors and tests to consider when determining whether "undue hardship" exists in a particular case. Since enactment of the Bankruptcy Code, the Second Circuit Court of Appeals adopted a three-prong test for determining "undue hardship" in the educational loan context. *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2nd Cir.1987). *But see, Pennsylvania Higher Educ. Assistance Agency v. Johnson,* 5 B.C.D. 532 (Bankr.E.D.Pa.1979) (Prior to the adoption of the Bankruptcy Code, the bankruptcy court for the Eastern District of Pennsylvania propounded a different and oft-cited three-prong undue hardship test.). According to the Second Circuit in *Brunner,* in order to gain discharge under 11 U.S.C. § 523(a)(8)(B), a debtor must show:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* In 1998, the Ninth Circuit Court of Appeals adopted the *Brunner* test as the appropriate test for determining what constitutes undue hardship under 11 U.S.C. § 523(a)(8)(B). *United Student Aid*

*Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1114 (9th Cir.1998) ("We adopt the *Brunner* test as the test to be applied to determine the 'undue hardship' required to discharge student loans in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)(B)"). In *Pena*, the Court summarized the *Brunner* test as thus:

> First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner*, 831 F.2d at 396. The court noted that this portion of the test "comports with common sense" and had already "been applied frequently as the minimum necessary to establish 'undue hardship.'" *Id.* (citing *In re Bryant*, 72 B.R. 913, 915 (Bankr.E.D.Pa.1987)).

> Second, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. This second prong is intended to effect "the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *Id.*

> The third prong requires "that the debtor has made good faith efforts to repay the loans...." *Brunner*, 831 F.2d at 396. The "good-faith" requirement fulfills the purpose behind the adoption of section 523(a)(8). *Brunner*, 46 B.R. at 754–55. Section 523(a)(8) was a response to "a 'rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of education loan debts.'" *Id.*, (quoting the Report of the Commission on the Bankruptcy Laws of the United States, House Doc. No. 93–137, Pt. I, 93d Cong., 1st Sess. (1973) at 140 n. 14). This section was intended to "forestall students ... from abusing the bankruptcy system." *Id.*

*Pena* at 1111. This Court, in *In re House*, 17 Mont.B.R. 321 (Bankr.Mont.1999), followed the directive of the *Pena* Court by utilizing the three-prong *Brunner* test, which test is also applicable in the instant case.

■ Defendants United States of America and the Montana University System do not dispute that Kim has made a good faith effort to repay her student loan obligations or that Kim is currently unemployed and lacks sufficient funds to cover her reasonable living expenses. Since the Defendants have conceded the first and third prongs of the *Brunner* test, the sole remaining issue is whether Kim has satisfied the second prong of the *Brunner* test. Courts which have examined the second prong of the *Brunner* test under similar scenarios focus on whether a debtor's present financial condition is temporary, or whether the condition will exist for a significant period of time. *In re Pena*, 155 F.3d at 1113 (Granting a discharge of the debtors' student loans where one of the debtor's was declared permanently mentally disabled and incapable of holding a job for more that six months to a year.); *Matter of Roberson*, 999 F.2d at 1137 (Discharge of student loans was denied where the debtor's current impediments to employment, including lack of transportation and wrist and back injuries, would not preclude gainful employment in the future.); *In re Brunner*, 46 B.R. at 757 (The debtor, who claimed to suffer from anxiety and depression, was denied a discharge of her student loans where the evidence was "too thin to support a finding that her chances of finding any work at all [were] slim".).

## DISCUSSION

■ Based upon the facts as set forth above, Kim seeks a discharge of her student loans arguing she would suffer undue hardship if required to repay her student loan obligations. To satisfy the second prong of the *Brunner* test Kim must show, through substantial credible evidence, that

her "dire financial condition is likely to exist for a significant portion of the repayment period." *Matter of Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993). *See also Pena*, 155 F.3d at 1111; *Brunner*, 831 F.2d at 396. Kim attempts to satisfy this prong with the argument that her "medical condition has precluded her from maintaining steady employment and her doctor's medical prognosis is that her condition will continue for the rest of her life." The "agreed" facts in this case do not support Kim's contention that her medical condition has precluded her from maintaining steady employment.

The facts distilled by this Court from the various documents filed by the parties in this case show Kim was fired from her job with the Human Resources Development Council for an undisclosed reason in 1997 and was later reinstated at that job after she fought the discharge. Kim left her job at the Human Resources Development Council in 1998 to accept a position at the American Diabetes Association. Shortly thereafter, Kim was hired as a manager by the Denver Regional Census Center. There is nothing in the record to suggest Kim left either her position at the Human Resources Development Council or the American Diabetes Association for medical reasons. The facts do, however, suggest that Kim left her position with the American Diabetes Association because she could earn higher wages as a Regional Census Center manager. Unfortunately, the position with the Denver Regional Census Center was only temporary.

The evidence also shows that Kim's chronic medical disorders are "problems that will be [sic] need to be treated throughout her life." See p. 2 of a letter dated March 6, 2000, written by Dr. David B. Yelvington and addressed to Kim's counsel. However, Dr. Yelvington goes on to explain that Kim "is presently functioning quite well, both in her home setting and in her occupational pursuits" and that "[h]er prognosis, if she remains in treatment, is good." In this Court's view, the single statement by Kim's doctor that she suffers from chronic depression and dysthymia does not satisfy the second *Brunner* prong by proving that Kim's state of affairs is likely to persist. *Pena*, 155 F.3d at 1111; *Brunner*, 831 F.2d at 396.

In the instant case, the facts show that Kim's medical conditions resulted "from factors beyond [her] reasonable control." *In re Holtorf*, 204 B.R. 567, 572 (Bankr. S.D.Cal.1997). *See Matter of Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993). However, Kim has not demonstrated the "unique and extraordinary circumstances" required over and above mere financial adversity for which undue hardship is reserved. *In re Thomsen*, 234 B.R. 506, 510 (Bankr.Mont.1999). In *In re Mahr*, 17 Mont.B.R. 481, 491 (Bankr.Mont.1999), this Court explained:

> In order to obtain a hardship discharge under § 523(a)(8), debtors must show more than mere financial difficulty, for if that were the requirement, all student loans in bankruptcy would be dischargeable. As set forth in this Order, undue hardship requires financial hardship combined with other extenuating circumstances. For instance, in the case of *In re Kersey v. Bank One of Marion Indiana (In re Kersey)*, 15 Mont. B.R. 442 (Bankr.Mont.1996), the Court granted the debtor a discharge of his student loans where the debtor was 54 years old, earning $5.00 an hour and caring for his non-debtor spouse who was permanently disabled as a result of a debilitating stroke. In that case, debtor's monthly income was $774.14 and his expenses were $948.31. While the *Kersey* case is an extreme example, Plaintiff has done nothing more than demonstrate financial adversity without any unique or extraordinary circumstances. This showing alone does not satisfy Plaintiff's burden under 11 U.S.C. § 523(a)(8).

The Court is not unsympathetic to Kim's current financial crisis. However, the Honorable Terry L. Myers of Idaho re-

cently recognized that "Congress has seen fit to erect a high hurdle to debtors seeking to discharge student loan obligations." *Wegrzyniak v. United States of America (In re Wegrzyniak)*, 241 B.R. 689, 696 (Bankr.Idaho 1999). In this case, Kim has failed to overcome that high hurdle by satisfying all three prongs of the *Brunner* test. The Defendants conceded the first and third prongs of the test leaving only the second prong for Kim to satisfy. In this case, the various documents filed by Kim under the heading of "Agreed" facts simply do not satisfy her burden. Kim is a 34 year-old person who, according to her own doctor, has the ability—albeit with proper medication and therapy—to function "quite well, both in her home setting and in her occupational pursuits." Accordingly, Kim—not unlike the debtor in *Brunner* who was suffering from anxiety and depression—has not shown to this Court's satisfaction that her current financial situation will persist over the life of her student loans.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding to determine the dischargeability of particular student loan debts under 28 U.S.C. § 157(b)(2)(I) and 11 U.S.C. § 523(a)(8).

3. Kim has not satisfied her burden of proof under § 523(a)(8). In particular, Kim has failed to satisfy the second prong of the test set forth in *Brunner*, 831 F.2d at 396, and *Pena*, 155 F.3d at 1114, by showing, by a preponderance of the evidence, that her state of affairs is likely to persist for a significant portion of the student loan repayment period and thus, that excepting such debts from Kim's discharge will impose an undue hardship.

IT IS THEREFORE ORDERED a separate Judgment shall be entered in favor of Defendants United States of America and Montana University System and against Plaintiff/Debtor Kim Mary Hat-field; and Plaintiff/Debtor's Complaint is dismissed with prejudice.