In re Margaret D. GARMERIAN, Debtor.

Margaret D. GARMERIAN, Plaintiff,

v.

RHODE ISLAND HIGHER EDUCATION ASSISTANCE AUTHORITY and Fleet National Bank, Defendants.

Bankruptcy No. 8600669.

United States Bankruptcy Court, D. Rhode Island.

Dec. 11, 1987.

Sanford M. Kirshenbaum, Providence, R.I., for debtor.

## SUPPLEMENTAL ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on November 12, 1987, on the objection of the Rhode Island Higher Education Assistance Authority to the motion of Margaret D. Garmerian for hardship discharge. Although we decided from the bench that the debt in question was nondischargeable, the Court also suggested that the parties would be free, through negotiation, to arrive at a payment schedule agreeable to both. The parties did confer, but could not agree on payment terms, and requested the Court to also include that item as a part of its order.

Based on the testimony, the exhibits, the arguments of counsel, and the applicable law, the debtor is ordered to pay said obligation, in the amount of approximately $10,000, either at the rate called for in the contract (not in evidence), or at the rate of $200 per month, whichever is lower. This order is without prejudice to the right of either party to seek a modification of the rate of payment, in the event of future change of circumstance affecting the debtor's ability to pay, either more or less.

While we do not attempt here to include reference to every fact considered by the Court in concluding as it has, some notable facts which deserve mention are:

(1) That the debtor owes no other debts;

(2) Her gross annual income is approximately $20,000;

(3) She is a skilled employee of the State of Rhode Island, with 16 years of service, and has vested retirement income, either at age 62 or 65;

(4) Her monthly rent, living and clothing expense, yearly IRA contributions, and standard of living generally, leave her with the ability to pay the debt in question without suffering undue hardship, within the meaning of 11 U.S.C. § 523(a)(8).

"[T]he code does not define 'undue hardship' ... [it] seems universally accepted, however, that 'undue hardship' contemplates unique and extraordinary circumstances. Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy." *In re Brown*, 18 B.R. 219, 222 (Bankr.D.Kan.1982). *See also In re Conrad*, 3 C.B.C.2d 54, 6 B.R. 151 (Bankr. W.D.Ky.1980). It is also clear in the Congressional Record Statements (Pub.L. 96–56, 93 Stat. 387 [1979]), that the drafters intended to eliminate misuse of the protections afforded under Bankruptcy Code § 523(a)(8). "Certainly the taxpayer should not pick up the tab for any individual who is capable of paying his own way ... [i]t (the guaranteed student loan program) was never intended to be used as a back door means of paying the bill with taxpayers' money." Prior to the enactment of Pub.L. No. 96–56, 93 Stat. 387 (1979), there was documented widespread abuse of the student loan program by individuals who had benefited from educational loans and who routinely thereafter attempted to avoid their obligations by filing for bankruptcy. The law was designed to

address and to correct such abuses, to "assure [that] future. generations of students will also have an educational loan available to them in their pursuit of a higher education." 125 Cong.Rec. S9160 (daily ed. July 11, 1979) (statement of Sen. DeConcini). Accordingly, we conclude, based upon the evidence, that payment of the debt, as ordered, will not result in undue hardship.