In re Barbara MARSH, Debtor.

Barbara Marsh, Plaintiff,

v.

Moorehead State College and United States Department of Education, Defendants.

Bankruptcy No. 00–10341–7. Adversary No. 00/00021.

United States Bankruptcy Court, D. Montana.

Nov. 20, 2000.

Dane C. Schofield, Peterson and Schofield, Billings, MT, for debtor/plaintiff.

Victoria L. Francis, Assistant U.S. Attorney, U.S. Attorney's Office, Billings, MT, for U.S. Department of Education.

## ORDER

RALPH B. KIRSCHER, Chief Judge.

In this adversary proceeding the Plaintiff/Debtor Barbara Marsh ("Barbara"), seeks a determination under 11 U.S.C. § 523(a)(8) that denying the discharge of her student loan obligations owing to the Defendants Moorehead State College and the United States Department of Education ("DOE"), would impose an undue hardship on her. DOE answered Barbara's Complaint on September 28, 2000. After due notice, trial in this matter was held November 7, 2000, at Billings. Dane C. Schofield appeared on behalf of Barbara and Victoria L. Francis, Assistant U.S. Attorney, appeared on behalf of DOE. In addition, Barbara testified and Barbara's Exhibits 1 through 9 were admitted into evidence without objection. At the close of trial, the Court deemed the record closed and matter ready for decision.

## BACKGROUND

Barbara is a fifty year old woman living in public housing. Barbara has two children, ages 17 and 24. The twenty four year old lives on his own. The seventeen year old resides with Barbara in public housing. Barbara is employed as a dispatcher/secretary and earns roughly $545.00 every two weeks.

Barbara has lived in Billings since the age of 3. Barbara graduated from high school in 1968 and in the early 1970's she attended college with the goal of obtaining a degree in education/music. Barbara never received a teaching degree nor did she receive a teaching certificate. Barbara has worked minimum wage jobs her entire life. A copy of Barbara's 1999 1040A Federal Income Tax Return reflects Barbara had adjusted gross income of $12,775.00 in 1999. Barbara's tax refund for 1999 in the sum of $2,573.00 was seized by DOE and was applied to Barbara's outstanding student loan obligations.

Barbara owes approximately $9,135.57 on her student loan obligations and testi-

fied it would create an undue hardship on her if she were forced to repay such obligations since she would not be able to maintain a minimal standard of living and repay her student loan debts at the same time. In October, Barbara received a check in the sum of $600.00 for past due child support. Barbara's Schedule I reflects she had monthly income of $548.00 on February 11, 2000. Barbara's testified that she is entitled to $300.00 per month for child support. This amount, however is not reflected on Barbara's Schedule I since the payments have, in the past, been sporadic. Nevertheless, Barbara is working with the State of Montana to secure those payments and received a check in the sum of $600.00 in October for two months of child support.

Barbara's Schedule I reflects monthly expenses in the sum of $688.00, which includes $158.00 per month for rent, $50.00 for home maintenance, $75.00 for food, $100.00 for clothing, $80.00 for laundry and dry cleaning, and $40.00 for transportation. Barbara was unemployed at the time she filed her Schedules and her rental expense, which is dependent upon her income, was $158.00 per month. Since Barbara is now employed, her rent has increased to $246.00 per month, increasing her total monthly expenses from $688.00 to $776.00. Barbara testified that her scheduled monthly expenses are artificially low, but did not give any other concrete figure for expenses other than the number set forth in her schedules. Subtracting Barbara's total monthly expenses from her monthly income, exclusive of child support, results in excess monthly income of $314.00 per month.

Barbara does not own any assets of any value other than her 1986 Chrysler LeBaron, which has a scheduled value of $1,000.00 and $2,300.00 in a 401K program. All Barbara's assets have been claimed exempt on Schedule C. Barbara does not have any secured debt and has scheduled four unsecured creditors, two of whom are Defendants in this Adversary Proceeding.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding to determine the dischargeability of a particular debt under 28 U.S.C. § 157(b)(2)(I); specifically, whether excepting Barbara's student loan debts from her discharge would impose an undue hardship on Barbara as provided under § 523(a)(8). This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052. After careful consideration of the facts and applicable law, the Court finds in favor of the Defendants DOE and Moorehead State College.

## APPLICABLE LAW

At the time Barbara filed their voluntary Chapter 7 bankruptcy petition on February 11, 2000, 11 U.S.C. § 523(a) had been amended to read as follows:

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

▇▇▇ The Bankruptcy Code does not define "undue hardship." Courts have held, however, that Congress intended the term to be interpreted strictly, and on a case-by-case basis. *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98 (Bankr.N.D.Ohio 1982); *United States v. Brown (In re Brown)*, 18 B.R. 219 (Bankr. Kan.1982); *Garmerian v. Rhode Island*

Higher Educ. Assistance Auth. (In re Garmerian), 81 B.R. 4 (Bankr.R.I.1987). As the court in Brown noted:

It seems universally accepted, however, that "undue hardship" contemplates unique and extraordinary circumstances. Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy.

Brown, 18 B.R. at 222. Courts are also in agreement that debtors have the burden of proof to show evidence of undue hardship sufficient to discharge student loans. Healey v. Massachusetts Higher Educ. (In re Healey), 161 B.R. 389, 393 (E.D.Mich. 1993); Rose v. United Student Aids Funds MT (In re Rose), 6 Mont. B.R. 462, 464 (Bankr.Mont.1988); Connecticut Student Loan Found. v. Keenan (In re Keenan), 53 B.R. 913 (Bankr.Conn.1985).

 Courts have identified several factors and tests to consider when determining whether "undue hardship" exists in a particular case. Since enactment of the Bankruptcy Code, the Second Circuit Court of Appeals adopted a three-prong test for determining "undue hardship" in the educational loan context. Brunner v. New York State Higher Educ. Services Corp., 831 F.2d 395, 396 (2nd Cir.1987). According to the Second Circuit in Brunner, a debtor, in order to gain discharge under 11 U.S.C. § 523(a)(8)(B), must show:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Id. In 1998, the Ninth Circuit Court of Appeals adopted the Brunner test as the appropriate test for determining what constitutes undue hardship under 11 U.S.C. § 523(a)(8)(B). United Student Aid Funds v. Pena (In re Pena), 155 F.3d 1108, 1114 (9th Cir.1998) ("We adopt the Brunner test as the test to be applied to determine the 'undue hardship' required to discharge student loans in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)(B)"). In Pena, the Court summarized the Brunner test as thus:

First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." Brunner, 831 F.2d at 396. The court noted that this portion of the test "comports with common sense" and had already "been applied frequently as the minimum necessary to establish 'undue hardship.'" Id. (citing In re Bryant, 72 B.R. 913, 915 (Bankr.E.D.Pa.1987)).

Second, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." Brunner, 831 F.2d at 396. This second prong is intended to effect "the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." Id.

The third prong requires "that the debtor has made good faith efforts to repay the loans...." Brunner, 831 F.2d at 396. The "good-faith" requirement fulfills the purpose behind the adoption of section 523(a)(8). Brunner, 46 B.R. at 754–55. Section 523(a)(8) was a response to "a 'rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of education loan debts.'" Id., (quoting the Report of the Commission on the Bankruptcy Laws of the United States, House Doc. No. 93–137, Pt. I, 93d Cong., 1st Sess. (1973) at 140 n. 14). This section was intended to "forestall students ... from abusing the bankruptcy system." Id.

Pena at 1111. This Court, in In re House, 17 Mont. B.R. 321 (Bankr.Mont.1999), fol-

lowed the directive of the *Pena* Court by utilizing the three-prong *Brunner* test, which test is also applicable in the instant case.

## DISCUSSION

■ In the case *sub judice*, the Court concludes that Barbara has not satisfied the *Brunner* test, and thus, the obligations owing to the DOE and Moorehead State College are not dischargeable. As set forth above, the *Brunner* analysis starts with an examination of whether debtors can maintain a minimal standard of living and still repay their student loan obligations. Barbara's Schedules, as discussed above, reflect that her monthly income exceeds her monthly expenses by $314.00. Barbara testified that her expenses are artificially low but failed to support such assertion. However, even if the Court increases Barbara's expenses by twenty-five percent, her monthly income would exceed her increased monthly expenses by $120.00 per month. Furthermore, this amount does not reflect any child support Barbara may receive from her ex-spouse. From these facts, the Court concludes that Barbara has not satisfied the first prong of the *Brunner* test.

■ To satisfy the second prong of the *Brunner* test, debtors must prove that their state of affairs is likely to persist. Courts which have examined the second prong of the *Brunner* test under similar scenarios focus on whether a debtor's present financial condition is temporary, or whether the condition will exist for a significant period of time. *In re Pena,* 155 F.3d at 1113 (Granting a discharge of the debtors' student loans where one of the debtor's was declared permanently mentally disabled and incapable of holding a job for more that six months to a year.); *Matter of Roberson,* 999 F.2d 1132, 1137 (7th Cir.1993) (Discharge of student loans was denied where the debtor's current impediments to employment, including lack of transportation and wrist and back injuries, would not preclude gainful employment in the future.); *In re Brunner,* 46 B.R. at 757 (The debtor, who claimed to suffer from anxiety and depression, was denied a discharge of her student loans where the evidence was "too thin to support a finding that her chances of finding any work at all [were] slim".). As noted above, Barbara has secured employment and her monthly earnings exceed her monthly income and Barbara testified that she has no mental or physical impediments which preclude her from working full-time. Moreover, there is always the possibility that Barbara may receive the part due child support she is owed. Finally, Barbara's son is seventeen years old and has no mental or physical impediments. Thus, Barbara's monthly expenses should decrease once her son obtains employments and/or reaches the age of majority. Based upon the foregoing, the Court finds Barbara has also failed to satisfy the second prong of the *Brunner* test.

■ Finally, while Barbara has satisfied the good faith requirement as set forth in *Brunner,* such fact is outweighed by factors one and two, which Barbara did not satisfy. Furthermore, in order to obtain a hardship discharge under § 523(a)(8), debtors must show more than mere financial difficulty, for if that were the requirement, all student loans in bankruptcy would be dischargeable. As set forth in this Order, undue hardship requires financial hardship combined with other extenuating circumstances. For instance, in the case of *In re Kersey v. Bank One of Marion Indiana (In re Kersey),* 15 Mont. B.R. 442 (Bankr.Mont.1996), the Court granted the debtor a discharge of his student loans where the debtor was 54 years old, earning $5.00 an hour and caring for his non-debtor spouse who was permanently disabled as a result of a debilitating stroke. In that case, debtor's monthly income was $774.14 and his expenses were $948.31. While the *Kersey* case is an extreme example, Barbara has done nothing more than demonstrate financial adversity without any unique or

extraordinary circumstances. This showing alone does not satisfy a plaintiff's burden under 11 U.S.C. § 523(a)(8).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding to determine the dischargeability of particular student loan debts under 28 U.S.C. § 157(b)(2)(I) and 11 U.S.C. § 523(a)(8).

3. Barbara has not satisfied her burden of proof under § 523(a)(8). In particular, Barbara has failed to satisfy the first and second prong of the test set forth in *Brunner*, 831 F.2d at 396, and *Pena*, 155 F.3d at 1114, by showing, by a preponderance of the evidence, that she will not be able to maintain a minimal standard of living if forced to repay her student loan obligation and that her state of affairs is likely to persist for a significant portion of the student loan repayment period. In conclusion, Barbara has failed to show that excepting her student loan debts from her discharge will impose an undue hardship.

IT IS THEREFORE ORDERED a separate Judgment on the merits shall be entered in this adversary proceeding, in favor of Defendants United States of America, Department of Education and Moorehead State College, and against Plaintiff Barbara Marsh; and Plaintiff Barbara Marsh's Complaint is dismissed with prejudice.