**In re Gary A. GETTLE and Claudia Lynn Gettle, Debtors.**

**Gary A. Gettle, Plaintiff,**

v.

**Sallie Mae Servicing Corporation and Montana State University Bozeman, Defendants.**

**Bankruptcy No. 00–20626–7.
Adversary No. 00/00057.**

United States Bankruptcy Court,
D. Montana.

Nov. 30, 2000.

Richard A. Ramler, Belgrade, MT, for plaintiff/debtors.

Alan C. Bryan, Crowley, Haughey, Hanson, Toole & Dietrich, PLLP, Billings, MT, for Educational Credit Management Corporation.

LeRoy H. Schramm, Montana University System, Helena, MT, for defendant Montana University System.

### *ORDER*

RALPH B. KIRSCHER, Chief Judge.

In this adversary proceeding the Plaintiff/Debtor Gary A. Gettle ("Gary"), seeks a determination under 11 U.S.C. § 523(a)(8) that denying the discharge of his student loan obligations owing to the Defendants Sallie Mae Servicing Corporation and the Montana State University–Bozeman ("MSU"), would impose an undue hardship on him. Educational Credit Management Corporation ("ECMC"), a holder of an obligation referred to in Gary's Complaint, and MSU filed Answers to Gary's Complaint on August 18, 2000. The Court thus scheduled the trial in this matter for September 21, 2000. Upon Gary's request, the September 21, 2000, trial was continued to October 24, 2000. On October 18, 2000, Gary, MSU and ECMC filed a joint request to submit the matter to the Court on briefs and stipulated facts. The parties request was granted in an Order entered that same date.

The parties filed the following Stipulated Facts on November 3, 2000: [1]

1. In the Stipulated Facts, "the parties stipulate to the entry into evidence ECMC's Exhib- its A, B, C, and D, previously filed herein."

1. Gettle is 59 years of age and married to Claudia L. Gettle. However, during September, 2000, the Gettles separated. There is currently no divorce action pending, and Gettle is hoping for a reconciliation.

2. Gettle resides alone in Bozeman, Montana, in a trailer that he owns. Claudia L. Gettle currently resides in Missouri. Gettle has no dependents.

3. During 1988, Gettle enrolled at the Montana State University, located in Bozeman, Montana, and graduated with a Bachelors of Science in education in 1995.

4. Between the years 1988, and 1995, Gettle applied for and received several guaranteed student loans. In conjunction with the student loans, Gettle executed several promissory notes. On or about August 25, 1999, Gettle consolidated his student loans (with the exception of a loan to the University that was omitted) into one loan, and executed a promissory note evidencing the new debt (the "Consolidated Loan"). As of October 1, 2000, Gettle's Consolidated Loan balance was $26,773.29.

5. On September 11, 2000, the Consolidated Loan was in due course assigned to ECMC. ECMC is the real party in interest to this action as the assignee of the Consolidated Loan.

6. Gettle is indebted to the University on a student loan. Gettle borrowed money for educational purposes directly from Montana State University in Bozeman. The amount owed on this educational loan on the date of bankruptcy filing was $5,273.39 ($5,006.98 principal and $266.41 interest) with interest continuing to accrue at 5% annually.

7. Gettle financed his education through the foregoing student loans, part-time employment, and contributions by Claudia L. Gettle.

8. Gettle did not obtain a teaching certificate, nor has he ever held a teaching position.

9. Gettle applied for, and received, several deferment of payment requests and forbearance of payment requests.

10. Gettle has made numerous payments on his student loans.

11. Gettle's monthly income and expenses are reflected in Schedules I and J, with some changes due to the current separation from Mrs. Gettle.

12. Gettle is currently employed at a Target store located in Bozeman, Montana, and does not expect his income to significantly increase or decrease in the foreseeable future.

Gary began working at Target part-time in August of 1999. Prior to that time, Gary was working part-time at Life-link but quit that job in August or September of 2000 because Life-link was running out of work for Gary. Deposition of Gary Little, p. 10 and 13. Gary was also working full-time at Hillcrest Retirement Community, where he had been employed for approximately 10 or 11 years. *Id.* at 12. Gary left his job at Hillcrest in August of 1999, where he earned between $7.00 and $8.00 per hour, with the hopes he could increase his monthly take-home pay by working more hours per month at Target, albeit at a reduced hourly pay rate. *Id.* at 18. However, three days after Gary left his job at Hillcrest and started working at Target he became ill from a tooth infection which drained into his lungs. Gary spent over a month in the hospital as a result of his illness. As Gary explained, "after I got ill just everything fell apart." *Id.* at 19. Gary missed almost two months of work at Target as a result of his illness.

Gary's now estranged wife, Claudia, was the head of Environmental Services at Evergreen Rest Home but was forced to quit

No such Exhibits have been filed with the Court.

that job in September of 1999, because of a neck injury. Claudia received unemployment insurance for a period of time after she left Evergreen Rest Home but those benefits have since expired.

Exhibit E attached to the Stipulated Facts is a letter from Curt G. Kurtz, MD to Debtors' attorney, in which Doctor Kurtz writes:

> Gary Gettle suffers from essential hypertension, chronic recurrent prostatitis, diabetes mellitus non-insulin dependent, and experienced an empyema of his lung in the last year. He also suffers from chronic depression and may have hemochromatosis which has never been addressed by his examining physician. His personality is such that with [sic] any stress is intolerable and will cause his blood pressure to be elevated and his blood sugar to rise rapidly and be unresponsive to medications.

Additionally, Gary and Claudia are both in need of dental work, which Debtors cannot afford at the present time. Gary, however, testified at his deposition that his health problems do not prohibit him from working full-time. Deposition of Gary Little, p. 45.

Gary is presently receiving benefits through the Veteran's Administration, but his continued receipt of those benefits is dependent on Gary's financial condition from the preceding year. Debtors' income in 1999 was $42,715.00.[2] Thus, Gary may not be eligible for the Veteran's benefits during the next year. However, Gary is confident he will be eligible for benefits the following year due to the decrease in his income and given the fact that he and Claudia are separated. Also, Gary pays approximately $100.00 per month to purchase health benefits for himself and Claudia through his employment with Target.

Debtors' Schedules filed in March of 2000, reflect that Gary's monthly income is $856.00 and Claudia's is $100.00. Debt-

ors' combined monthly expenditures are listed at $1,301.00, which amount includes $450.00 per month for medical and dental expenses. Gary has not provided any updated income and expense figures reflecting his current economic situation; particularly in light of his separation from Claudia.

On November 3, 2000, LeRoy Schramm, on behalf of the Montana University System filed a "Statement in Support of Defendant's Positions in Lieu of Brief"; Gary filed a Plaintiff's Brief in Support of Discharge of Student Loans; and ECMC filed a Trial Brief. The Court has reviewed the various documents filed in this case, including the parties' briefs and has reviewed the applicable law under § 523(a)(8) and deems this matter ready for decision.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding to determine the dischargeability of a particular debt under 28 U.S.C. § 157(b)(2)(I); specifically, whether excepting Gary's student loan debts from Debtors' discharge would impose an undue hardship on Debtors as provided under § 523(a)(8). This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052. After careful consideration of the facts and applicable law, the Court finds in favor of the Defendants ECMC and the Montana State University System.

## APPLICABLE LAW

At the time Debtors filed their voluntary Chapter 7 bankruptcy petition on March 15, 2000, 11 U.S.C. § 523(a) had been amended to read as follows:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

---

2. During 1999, Gary and Claudia were both working two jobs. Claudia was earning approximately $10.75 an hour at Evergreen Rest Home and both Gary and Claudia were earning roughly $100.00 per month each from their employment at Life-link.

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

■ The Bankruptcy Code does not define "undue hardship." Courts have held, however, that Congress intended the term to be interpreted strictly, and on a case-by-case basis. *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98 (Bankr.N.D.Ohio 1982); *United States v. Brown (In re Brown)*, 18 B.R. 219 (Bankr. Kan.1982); *Garmerian v. Rhode Island Higher Educ. Assistance Auth. (In re Garmerian)*, 81 B.R. 4 (Bankr.R.I.1987). As the court in *Brown* noted:

It seems universally accepted, however, that "undue hardship" contemplates unique and extraordinary circumstances. Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy.

*Brown*, 18 B.R. at 222. *See also, Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 196 (Bankr. N.D.Ohio 2000) ("[T]he existence of the adjective 'undue' in front of the word 'hardship' clearly indicates that Congress intended that the hardship experienced by the debtor must be very severe."). In addition:

[A] loan ... that enables a person to earn substantially greater income over his working life should not as a matter of policy be dischargeable before he has demonstrated that for any reason he is unable to maintain himself and his dependents and to repay the educational debt.

*Report of the Comm'n of the Bankr.Laws of the United States*, House Doc. No. 93–137, Part I, 93rd Cong., 1st Sess. (1973) at 140, n. 14 and 15, reprinted in COLLIER ON BANKRUPTCY, Appendix 2 at PI-i. Moreover, in a complaint to determine the dischargeability of debt, it is the debtor who carries the burden of showing evidence of undue hardship sufficient to discharge a student loan. *Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 393 (E.D.Mich.1993); *Rose v. United Student Aids Funds MT (In re Rose)*, 6 Mont. B.R. 462, 464 (Bankr.Mont.1988); *Connecticut Student Loan Found. v. Keenan (In re Keenan)*, 53 B.R. 913 (Bankr.Conn.1985).

■ Courts have identified several factors and tests to consider when determining whether "undue hardship" exists in a particular case. Since enactment of the Bankruptcy Code, the Second Circuit Court of Appeals adopted a three-prong test for determining "undue hardship" in the educational loan context. *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2nd Cir.1987). *But see, Pennsylvania Higher Educ. Assistance Agency v. Johnson*, 5 B.C.D. 532 (Bankr.E.D.Pa.1979) (Prior to the adoption of the Bankruptcy Code, the bankruptcy court for the Eastern District of Pennsylvania propounded a different and oft-cited three-prong undue hardship test.). According to the Second Circuit in *Brunner*, in order to gain discharge under 11 U.S.C. § 523(a)(8)(B), a debtor must show:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* In 1998, the Ninth Circuit Court of Appeals adopted the *Brunner* test as the appropriate test for determining what constitutes undue hardship under 11 U.S.C. § 523(a)(8)(B). *United Student Aid*

*Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1114 (9th Cir.1998) ("We adopt the *Brunner* test as the test to be applied to determine the 'undue hardship' required to discharge student loans in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)(B)"). In *Pena*, the Court summarized the *Brunner* test as thus:

First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner*, 831 F.2d at 396. The court noted that this portion of the test "comports with common sense" and had already "been applied frequently as the minimum necessary to establish 'undue hardship.'" *Id.* (citing *In re Bryant*, 72 B.R. 913, 915 (Bankr.E.D.Pa.1987)).

Second, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. This second prong is intended to effect "the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *Id.*

The third prong requires "that the debtor has made good faith efforts to repay the loans...." *Brunner*, 831 F.2d at 396. The "good-faith" requirement fulfills the purpose behind the adoption of section 523(a)(8). *Brunner*, 46 B.R. at 754–55. Section 523(a)(8) was a response to "a 'rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of education loan debts.'" *Id.*, (quoting Report of the Commission on the Bankruptcy Laws of the United States, House Doc. No. 93–137, Pt. I, 93d Cong., 1st Sess. (1973) at 140 n. 14). This section was intended to "forestall students ... from abusing the bankruptcy system." *Id.*

*Pena* at 1111. This Court, in *In re House*, 17 Mont.B.R. 321 (Bankr.Mont.1999), followed the directive of the *Pena* Court by utilizing the three-prong *Brunner* test, which test is also applicable in the instant case.

## DISCUSSION

In the case *sub judice*, the Court concludes that Gary has not satisfied all three prongs of the *Brunner* test, and thus, Gary's obligations owing to the Defendants are not dischargeable. As set forth above, the *Brunner* analysis starts with an examination of whether debtors can maintain a minimal standard of living and still repay their student loan obligations. Debtors' schedules reflect that Debtors' have a combined monthly income of $956.00, of which $100.00 is attributable to Claudia. Claudia has since quit her job at Life-link, which was the source of her monthly income. Gary also testified during his deposition that he is no longer employed at Life-link due to lack of work, thereby reducing his monthly income by $100.00. In sum, Debtors now have a combined monthly income of $756.00, attributable solely to Gary.

Next, Debtors list monthly expenses of $1,301.00. It does not appear that Gary is supporting Claudia at this time, but he is still maintaining the family home. Debtors schedule J lists very few expenses, the majority of which are associated with the maintenance of Debtors' home. For instance, Debtors have scheduled $150.00 per month for the rental of their mobile home lot, $110.00 for electricity, $60.00 for telephone and $17.00 for cable. These expenses should remain relatively constant regardless of whether Claudia is living in the family home. The Court does, however, find it reasonable to reduce Debtors' scheduled expenses for food and medical by one-half since Claudia is no longer residing with Gary. The Court also finds it appropriate to increase Gary's total net monthly take-home pay by $50.00 per month for Claudia's health insurance. Increasing Gary's pay by $50.00 per month

and deducting those expenses attributable to Claudia leaves Gary with monthly expenses of $926.00 and monthly income of $806.00. Since Gary's monthly expenses of $926.00 exceed his monthly income by $120.00 per month, the Court concludes that Gary has satisfied the first prong of the *Brunner* test by showing he cannot maintain a minimal standard of living and repay his student loan obligations.

■ To satisfy the second prong of the *Brunner* test, debtors must prove that their state of affairs is likely to persist. Courts which have examined the second prong of the *Brunner* test focus on whether a debtor's present financial condition is temporary, or whether the condition will exist for a significant period of time. *In re Pena*, 155 F.3d at 1113 (Granting a discharge of the debtors' student loans where one of the debtor's was declared permanently mentally disabled and incapable of holding a job for more that six months to a year.); *Matter of Roberson*, 999 F.2d at 1137 (Discharge of student loans was denied where the debtor's current impediments to employment, including lack of transportation and wrist and back injuries, would not preclude gainful employment in the future.); *In re Brunner*, 46 B.R. at 757 (The debtor, who claimed to suffer from anxiety and depression, was denied a discharge of her student loans where the evidence was "too thin to support a finding that her chances of finding any work at all [were] slim".).

■ Gary is presently working full-time at Target earning $856.00 per month, net of taxes, but testified he is actively seeking other employment. Debtors' income from 1999 reflects that Gary and Claudia have the ability to earn at least $42,715.00 per year. Debtors' financial position began to unravel, in Gary's words, when he fell ill during the fall of 1999. At that time, Gary cashed in his 401K from Hillcrest, receiving proceeds of $6,802.00 which were used by Debtors' for daily living expenses. Gary also testified that prior to his illness "we had a savings account and we were doing fairly well, but it just wiped out everything. I mean, that's what part of our problem was."

Another indication Debtors were doing reasonably well financially—prior to Gary's illness—is Gary's statement that Debtors sold a home located in Great Falls, Montana, on a contract for deed, receiving a balloon payment of $10,000.00 on their contract in 1996 or 1997. Debtors used the proceeds of $10,000.00 for daily bills and student loan payments, and also financed their daughter's wedding.

The Court cannot deny that Debtors are in an unenviable financial position at this time, but nothing in the record convinces this Court that Debtors' present financial position will persist into the future. Debtors have owned their own businesses— Snappy Service in Dillon and Great Falls from 1971/1972 to 1984/1985—have bought and sold at least one home, currently own their mobile home free and clear of liens and have no scheduled secured or unsecured priority debt. Debtors have, in the past, been able to build a savings, including a retirement account. Gary testified that he is capable of full-time work and also indicated that Claudia is looking for employment in Missouri. Gary testified that Debtors' current financial status is a combination of him being ill and unable to work and of Claudia quitting her job at Evergreen Rest Home. Given Debtors' past employment history and Gary's testimony that he is both physically and mentally able to work full-time, the Court concludes that these Debtors can get back on their feet. Therefore, the Court concludes that Gary has not satisfied his burden under § 523(a)(8) by showing his present financial condition is likely to persist for any lengthy period of time.

■ Since Gary has failed to sustain his burden under the second prong of the *Brunner* test, the Court need not examine the third prong, requiring debtors to show they have made good faith effort to repay their student loan obligations. The Court

notes, however, that this prong of the *Brunner* test has been satisfied. First, the Stipulated Facts reference the fact that Gary has made numerous payments on his student loans and has applied for, and received, several deferment of payments requests and forbearance of payment requests. Second, numerous references exist in the record of payments made by Gary on his student loans, including a statement by Gary that he used part of the proceeds from the contract for deed "to catch up on my student loans". Gary also indicated during his deposition that he requested a forbearance or deferment of his student loans on several occasions. Thus, the Court would find that Gary has satisfied the third prong of the *Brunner* test.

In order to obtain a hardship discharge under § 523(a)(8), debtors must show more than mere financial difficulty, for if that were the requirement, all student loans in bankruptcy would be dischargeable. The Honorable Terry L. Myers of Idaho recently recognized that "Congress has seen fit to erect a high hurdle to debtors seeking to discharge student loan obligations." *Wegrzyniak v. United States of America (In re Wegrzyniak)*, 241 B.R. 689, 696 (Bankr.Idaho 1999). In this case, Gary has failed to overcome that high hurdle by satisfying all three prongs of the *Brunner* test.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding to determine the dischargeability of particular student loan debts under 28 U.S.C. § 157(b)(2)(I) and 11 U.S.C. § 523(a)(8).

3. Gary has not satisfied his burden of proof under § 523(a)(8). In particular, Gary has failed to satisfy the second prong of the test set forth in *Brunner*, 831 F.2d at 396, and *Pena*, 155 F.3d at 1114, by showing, by a preponderance of the evidence, that his state of financial affairs is likely to persist for a significant portion of the student loan repayment period and thus, that excepting such debts from Debtors' discharge will impose an undue hardship.

IT IS THEREFORE ORDERED a separate Judgment on the merits shall be entered in this adversary proceeding, in favor of Defendants Educational Credit Management Corporation and the Montana University System, and against Plaintiff Gary A. Gettle; and Plaintiff Gary A. Gettle's Complaint is dismissed with prejudice.