In re Steven A. HUTCHISON, and Paula J. Hutchison, Debtors.

Steven A. Hutchison, and Paula J. Hutchison, Plaintiffs,

v.

Pennsylvania Higher Education Assistance Administration, Defendant.

Bankruptcy No. 02–60547–7. Adversary No. 03/00006.

United States Bankruptcy Court, D. Montana.

June 10, 2003.

S. Charles Sprinkle, Libby, MT, for Debtors.

Richard J. Samson, Missoula, MT, trustee.

### ORDER

RALPH KIRSCHER, Bankruptcy Judge.

Plaintiffs/Debtors Steven A. Hutchison ("Steven") and Paula J. Hutchison ("Paula") commenced this adversary proceeding on January 17, 2003, seeking a determination that excepting student loan debt owing to the Defendant Pennsylvania Higher Education Assistance Administration ("PHEAA") from their discharge would impose an undue hardship on the Debtors under 11 U.S.C. § 523(a)(8). PHEAA filed an answer denying that Plaintiffs' student loan debts are dischargeable on grounds of undue hardship. After due notice, trial of this cause was held at Missoula on May 8, 2003. Both Steven and Paula Hutchison appeared and testified, represented by attorney S. Charles Sprinkle ("Sprinkle"). PHEAA was represented by attorney Harold V. Dye ("Dye"). Plaintiffs' Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 14, 15, and PHEAA's Ex. A, B, C, D, E, F, G, H, I, and J were admitted into evidence. Plaintiffs withdrew Ex. 10, and PHEAA's objection to Ex. 13 was sustained. At the close of the parties cases-in-chief trial the Court closed the record and took the matter under advisement. The Court has reviewed the evidence and the applicable law governing undue hardship under § 523(a)(8). This matter is ready for decision.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding to determine the dischargeability of particular debts under 28 U.S.C. § 157(b)(2)(I). This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052. At issue is whether excepting Debtors' student loan debt from their discharge will impose an undue hardship on the Debtors or their dependents under § 523(a)(8). For the reasons set forth below, Judgment shall be entered in favor of the Defendant PHEAA dismissing Plaintiffs/Debtors' complaint.

### FACTS

Steven and Paula Hutchison are married and have 3 children, ages 10, 7 and 5. They live in Libby, Montana, where they returned in 1996 and where Paula is employed by Sprinkle as a legal secretary. Neither the Plaintiffs nor their dependents suffer from any physical or mental disability. Ex. J, pp. 4–5. Steven recently was employed by Semitool in Kalispell, Montana, but was permanently laid off and presently receives unemployment benefits which began the first week of March, 2003, and continue for 21 weeks, Paula testified. Ex. H includes the Debtors' tax returns for 2001, and shows they had in income in 2001 of $41,435. Ex. I consists of their 2002 tax returns and shows their income in 2002 as $33,782.

Steven has a student loan owed to NELA, which Paula testified has been taken over for collection by ECMC. Ex. 7

shows Steven's NELA loan, and Paula testified that the most current balance on the NELA loan is $2,726.60 [1]. Paula testified that she had 3 student loans for which she applied and was granted consolidation in November 1996. Steven attempted to consolidate his student loans, but was denied because he could not bring them current by making 3 consecutive payments. Ex. 3, 4, 5.

The Plaintiffs filed a voluntary Chapter 7 petition on October 9, 2002, with their Schedules and Statement of Affairs. Debtors listed $55,187.31 in unsecured nonpriority claims on Schedule F, including student loan debt owed to American Education Services/Wachovia Bank in the amount of $17,153.69 described as "consolidated student loans". Other student loan debts scheduled include Financial Assistance, Inc., in the amount of $2,729.83; First Union in the amount of $16,411.00; and Northwest Educational Loan Assoc. ("NELA") in the amount of $3,718.00. PHEAA filed the only Proof of Claim in the Debtors' bankruptcy case on February 7, 2003, in the amount of $18,091.91, based upon consolidated Perkins and Stafford student loans. Ex. A. No objection has been filed to PHEAA's Proof of Claim, and it is deemed allowed and prima facie evidence of the validity and amount. F.R.B.P. 3001(f).

Debtors' Schedule I shows total monthly income in the sum of $2,640.81, but that included Steven's income from Semitool. Ex. E. Schedule J shows monthly expenses of $2,613.67. Ex. F and G, compiled by PHEAA from Plaintiffs' discovery responses, show their monthly income in the amount of $3,213.29 and expenses in the amount of $3,017.44. Paul testified that after Steven was laid off their income and

expenses were reduced. Ex. 8 shows their current income, including Steven's unemployment and Paula's bonus, as $2,462.49 and their current expenses as $2,461.58.

Ex. 8 shows Debtors' current monthly expenses include, among other things, a $300 housing payment, $200 for daycare, $500 for food, $77 for cable & internet, a total of $88 for girl scout camp, dues, and soccer registration, $50 for recreation, $50 for meals out/fast food, and another $40 for "children entertainment". Paula testified that the daycare expense is for when their children get out of school. She testified that their youngest child is five and a half, and that beginning next year she will be in school the whole day.

Paula testified that the minimum proposed installment amount for the student loans owed to PHEAA is $167 per month, which she states they cannot afford. She testified that they have no luxury expenses, take no vacations, and cannot even afford a down payment to replace their car, a 1993 Dodge Intrepid with 170,000 miles and a bungee cord holding down the lid. Steven testified that he has no expensive hobbies or vices. Debtors' latest tax refunds have been seized to satisfy their student loan creditors. Ex. 14 is a letter from the Lincoln County, Montana, Board of Commissioners advising the Debtors their property taxes are delinquent.

While Steven was employed by Semitool he commuted each day from Libby to Kalispell, a 200 mile round trip. Prior to Semitool, Steven was employed in construction in Spokane, Washington. Paula described the economic situation in Libby as "destitute". No large corporate employers remain in Lincoln County, Montana, she testified. W.R. Grace, Asarco,

---

1. NELA and ECMC are not parties to this adversary proceeding, but Paula testified that ECMC agreed to be bound by the result.

Stimson Lumber and Semitool have all closed their operations in Lincoln County. Ex. 11 is a printout from the Montana Department of Labor and Industry, which Paula testified showed only 1 job listed as laborer for which Steven is qualified. She testified that Steven has no solid job leads in Libby, although he is trying to find work.

Paula testified that they have considered moving from Libby, but have not because rents in other communities would be three times higher, and she estimated they would need $3,000 for first and last months' rent for a home which could accommodate them and their 3 children, which they do not have.

Under questioning by the Court, Paula testified that the Debtors have not considered consolidation of their student loans under the William D. Ford Federal Direct Loan Program ("William D. Ford Program"). She testified she did not know anything about it. Having observed Paula and Steven's demeanor while testifying under oath and subject to cross examination, the Court finds that Paula and Steven both are credible witnesses. *In re Taylor*, 514 F.2d 1370, 1373–74 (9th Cir.1975); *see also, Casey v. Kasal*, 223 B.R. 879, 886 (E.D.Pa.1998).

Dye represented to the Court that PHEAA's loan is not in default. Rather, it is in bankruptcy forbearance during the pendency of the Debtors' Chapter 7 case.

## DISCUSSION

The discharge of student loan obligations is governed by 11 U.S.C. § 523(a)(8), which provides in relevant part:

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

█ The Bankruptcy Code does not define "undue hardship." Courts have held, however, that Congress intended the term to be interpreted strictly, and on a case-by-case basis. *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98 (Bankr.N.D.Ohio 1982); *United States v. Brown (In re Brown)*, 18 B.R. 219 (Bankr. Kan.1982); *Garmerian v. Rhode Island Higher Educ. Assistance Auth. (In re Garmerian)*, 81 B.R. 4 (Bankr.R.I.1987). As the court in *Brown* noted:

It seems universally accepted, however, that "undue hardship" contemplates unique and extraordinary circumstances. Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy.

*Brown*, 18 B.R. at 222. On the other hand, the Bankruptcy Code does not require that the debtor "live in abject poverty ... before a student loan may be discharged." *In re Mallinckrodt*, 260 B.R. 892, 900 (Bankr.S.D.Fla.2001) (*quoting In re Faish*, 72 F.3d 298, 305 (3rd Cir.1995)).

█ In addition:

[A] loan ... that enables a person to earn substantially greater income over his working life should not as a matter of policy be dischargeable before he has demonstrated that for any reason he is unable to maintain himself and his dependents and to repay the educational debt.

*Report of the Commission of the Bankruptcy Laws of the United States,* House Doc. No. 93–137, Part I, 93rd Cong., 1st Sess. (1973) at 140, n. 14 and 15, reprinted in COLLIER ON BANKRUPTCY, Appendix 2 at PI-i. In this case the record includes little evidence which suggests that Paula's and Steven's student loans enabled them to earn substantially greater income over their working lives, at least in Lincoln County. On the other hand, Steven was able to find employment outside of Lincoln County, in Spokane and then Kalispell, related to his education in electronic technology from North Idaho College. He is presently unemployed. Paula worked at minimum wage jobs and collections before obtaining her present employment as legal secretary. Paula now supports the family at a moderate, but by no means extravagant, standard of living based upon her income and Steven's unemployment. Thus, whether the student loans enabled them to earn "substantially greater income over" their working lives is not certain.

■ In a complaint to determine the dischargeability of student loan debt, a debtor has the burden of proof to show evidence of undue hardship sufficient to discharge the debt. *In re Rifino,* 245 F.3d 1083, 1087–88 (9th Cir.2001); *In re Pederson,* 18 Mont. B.R. 429, 434 (Bankr. D.Mont.2000), *In re Thomsen,* 17 Mont. 493, 499, 234 B.R. 506, 510 (Bankr.D.Mont. 1999); *Healey v. Massachusetts Higher Educ. (In re Healey),* 161 B.R. 389, 393 (E.D.Mich.1993); *Connecticut Student Loan Found v. Keenan (In re Keenan),* 53 B.R. 913 (Bankr.Conn.1985).

■ Courts have identified several factors and tests to consider when determining whether "undue hardship" exists in a particular case. Since enactment of the Bankruptcy Code, the United States Court of Appeals for the Second Circuit adopted another test for determining "undue hard-

ship" in the educational loan context. *Brunner v. New York State Higher Educ. Services Corp. ("Brunner"),* 831 F.2d 395, 396 (2nd Cir.1987). According to the Second Circuit in *Brunner,* in order to gain discharge under 11 U.S.C. § 523(a)(8)(B), a debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* The Ninth Circuit Court of Appeals adopted the *Brunner* test as the appropriate test for determining what constitutes undue hardship under 11 U.S.C. § 523(a)(8)(B). *United Student Aid Funds v. Pena ("Pena"),* 155 F.3d 1108, 1114 (9th Cir.1998) ("We adopt the *Brunner* test as the test to be applied to determine the 'undue hardship' required to discharge student loans in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)(B)"); *In re Rifino,* 245 F.3d 1083, 1087 (9th Cir.2001). In *Pena,* the Court summarized the *Brunner* test as thus,

> First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner,* 831 F.2d at 396. The court noted that this portion of the test "comports with common sense" and had already "been applied frequently as the minimum necessary to establish 'undue hardship.'" *Id.* (citing *In re Bryant,* 72 B.R. 913, 915 (Bankr.E.D.Pa.1987)).

> Second, the debtor must show "that additional circumstances exist indicating

that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. This second prong is intended to effect "the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *Id.*

The third prong requires "that the debtor has made good faith efforts to repay the loans ...." *Brunner*, 831 F.2d at 396. The "good-faith" requirement fulfills the purpose behind the adoption of section 523(a)(8). *Brunner*, 46 B.R. at 754–55. Section 523(a)(8) was a response to "a 'rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of education loan debts.'" *Id.*, (quoting the Report of the Commission on the Bankruptcy Laws of the United States, House Doc. No. 93–137, Pt. I, 93d Cong., 1st Sess. (1973) at 140 n. 14). This section was intended to "forestall students ... from abusing the bankruptcy system." *Id.*

*Pena* at 1111; *In re Rifino*, 245 F.3d at 1088–89.

This Court, in *In re House*, 17 Mont. B.R. 321 (Bankr.D.Mont.1999), followed the directive of the *Pena* Court by utilizing the three-prong *Brunner* test, which test is also applicable in the instant case. *See also, Gettle v. Sallie Mae Servicing Corp. (In re Gettle)*, 19 Mont. B.R. 59, 257 B.R. 583 (Bankr.D.Mont.2000); *Marsh v. Moorehead State College (In re Marsh)*, 19 Mont. B.R. 39, 257 B.R. 569 (Bankr. D.Mont.2000); *Hatfield v. William D. Ford Federal Direct Consolidation Program (In re Hatfield)*, 19 Mont. B.R. 47, 257 B.R. 575 (Bankr.D.Mont.2000); and *Hiltz v. U.S. Dept. of Education (In re Hiltz)*, 20 Mont. B.R. ——— (Bankr.D.Mont. 2003). The Debtors must prove all three

elements identified in *Brunner* before discharge can be granted on grounds of undue hardship. *In re Rifino*, 245 F.3d at 1087–88; *Hiltz*, 20 Mont. B.R. at ———.

**I. First Prong.**

■■■ As set forth above, the *Brunner* analysis starts with an examination of whether the Debtors can maintain a minimal standard of living and still repay their student loan obligations. *Rifino*, 245 F.3d at 1088. To satisfy the first prong the debtor must demonstrate more than simply tight finances. *Rifino*, 245 F.3d at 1088; *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999). "In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness." *Id.; see In re Faish*, 72 F.3d at 305 ("[T]he Bankruptcy Code does not require that the debtor 'live in abject poverty ... before a student loan may be discharged.'").

The Court concludes for several reasons that the Debtors have not satisfied the first *Brunner* prong. The Debtors demonstrated right finances, and the Court is sympathetic to the Debtors' current economic plight. However, the evidence does not show that the Debtors cannot maintain a minimal standard of living for themselves and their dependents if forced to repay the PHEAA loans. Paula testified that the monthly payment on the PHEAA loans is $167. The total expenses cable & internet, girl scout camp, dues, and soccer registration, recreation, meals out/fast food, and "children entertainment" is $305. That does not include the $200 for daycare each month which Paula states they need even through their children are in or soon will be in school full time, while Steven is unemployed and there is no explanation why he is unable to provide daycare for his children while he is unemployed.

The first prong of the *Brunner* test requires that the Debtors show they cannot repay their student loans and maintain a minimal standard of living. *Pena*, 155 F.3d at 1111. This prong "comports with common sense". *Id.; Brunner*, 831 F.2d at 396; *In re Pederson*, 18 Mont. B.R. at 438. Applying this common sense standard to the evidence, the Court concludes that the Debtors have not satisfied their burden of proof to show that they cannot maintain a minimal standard of living and still repay $167 per month to the PHEAA student loan obligations.

The Court notes that Paula testified that she does not know anything about the William D. Ford Program, and that the Debtors have not considered it. The William D. Ford Program is found at 34 C.F.R. § 685.100 *et seq.* It provides for loan consolidation and an income contingent repayment plan, 34 C.F.R. § 685.209, under which student loan debtors only have to make payments if their adjusted gross income exceeds the HHS Poverty Guidelines. Unpaid portions of loans under the income contingent repayment plan are cancelled after 25 years. 34 C.F.R. § 685.209(c)(4)(iv); *see Hallberg v. Montana Guaranteed Student Loan Program (In re Hallberg)*, 19 Mont. B.R. 416, 433 (Bankr.D.Mont.2002). The facts in this case are distinguishable from the facts in *Hiltz* as the debtor in *Hiltz* had consolidated his loans under the William D. Ford Program prior to filing bankruptcy so any repayment on Hiltz' student loans was not required, did not impose any hardship, and did not impact the current standard of living. *Hiltz*, 20 Mont. B.R. at ——. The facts in this case are also distinguishable from the facts in *Hallberg* as in *Hallberg* the Educational Credit Management Corporation ("ECMC") argued that Ms. Hallberg had failed the good faith prong by not applying for loan consolidation under the William D. Ford Program. *Hallberg*, 19

Mont. B.R. at 433. The Court disagreed with ECMC.

For the reasons stated above, the Court concludes the Debtors failed to satisfy the first prong of the *Brunner* test and therefore their student loans owed to PHEAA cannot be discharged on grounds of undue hardship. *In re Rifino*, 245 F.3d at 1087–88.

## II. Second Prong.

To satisfy the second prong of the *Brunner* test Debtors must prove that their state of affairs is likely to persist for a significant portion of the repayment period of the student loans. *Rifino*, 245 F.3d at 1088; *Pena*, 155 F.3d at 1111, *Brunner*, 831 F.2d at 396; *Pederson*, 18 Mont. B.R. at 439. The Ninth Circuit explains that the second prong "is intended to effect 'the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult that than of other nonexcepted debt.'" *Rifino*, 245 F.3d at 1088–89, quoting *Pena*, 155 F.3d at 1111. Courts which have examined the second prong of the *Brunner* test focus on whether a debtor's financial condition is temporary, or whether the condition will exist for a significant period of time. *Pena*, 155 F.3d at 1113; *Hiltz*, 20 Mont. B.R. at ——.

The Debtors certainly are in an unenviable financial situation. However, the evidence does not show that their state of affairs is likely to persist for a significant portion of the repayment period of the student loans. That is even more so if they were to seek consolidation under the William D. Ford Program with its 25–year income contingent repayment plan.

Neither the Debtors nor their children suffer from any physical or mental disability. Ex. J, pp. 4–5. Their recent tax returns, Ex. H and I, show that they both

can earn moderate income, and while Steven is presently unemployed the evidence shows that he has been employed in his field as a electronic technician in Spokane and Kalispell. Paula argued that the economic situation in Lincoln County is destitute, and that there are no longer any corporations which could employ Steven in his field. Common sense thus suggests that the Debtors consider moving away from Lincoln County in order for Steven to find employment elsewhere, like before, but Paula argued that they cannot afford to move.

The burden of proof is on the Debtors. *Rifino,* 245 F.3d at 1087–88; *Pederson,* 18 Mont. B.R. at 434. It is their right and choice to remain in Lincoln County, but there is not sufficient credible evidence that Steven cannot find employment at some time during the repayment period, or that the Debtors' daycare and other expenses cannot be reduced as their children grow. The Court concludes that the Debtors have failed their burden of proof under the second *Brunner* prong to show by a preponderance of the evidence that their state of affairs is likely to persist for a significant portion of the repayment period of the student loans.

### III. Third Prong.

The third *Brunner* prong requires that the debtor has made good faith efforts to repay the student loans. *Pena,* 155 F.3d at 1111; *In re Rifino,* 245 F.3d at 1087. Paula has consolidated her loans, and the record includes evidence that she made some payments demonstrating good faith. The Debtors having failed to satisfy the first two *Brunner* prongs, they have failed their burden of proof to show undue hardship under § 523(a)(8) to discharge their student loans to PHEAA. The Court need not reach a conclusion on the third *Brunner* prong.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding to determine the dischargeability of educational loans under 28 U.S.C. § 157(b)(2)(I) and 11 U.S.C. § 523(a)(8).

3. Debtors have not satisfied their burden of proof under § 523(a)(8) by a preponderance of the evidence. In particular, Debtors failed to satisfy the first and second prongs of the test set forth in *Brunner,* 831 F.2d at 396, and *Pena,* 155 F.3d at 1114, of showing that they are not able to maintain a minimal standard of living and repay their student loans, and that their state of financial affairs is likely to persist for a significant portion of the student loan repayment period. Thus, Debtors failed to show that excepting PHEAA's student loan debts from their discharge will impose an undue hardship on Debtors or their dependents.

**IT IS ORDERED** a separate Judgment shall be entered in this adversary proceeding for the Defendant PHEAA, dismissing Plaintiffs/Debtors' dischargeability complaint.

### *JUDGMENT*

In this adversary proceeding the Plaintiffs'/Debtors' dischargeability complaint having come on for trial before this Court, Honorable Ralph B. Kirscher, United States Bankruptcy Judge, presiding, and the issues having been duly considered and a decision having been rendered pursuant to an Order entered on this date,

**IT IS ORDERED** and **ADJUDGED** and **JUDGMENT** is hereby entered for the Defendant Pennsylvania Higher Education Assistance Administration; and Plaintiffs/Debtors' complaint to declare their

student loan debts owed to the Defendant dischargeable is **DISMISSED.**